### BRAND v. CONNERY.

1. MECHANICS' LIENS—DECREE—BILL IN AID OF EXECUTION—RES JUDICATA.

    A consent decree, dismissing a bill to enforce a mechanic's lien as to the owner of the land, is not a bar to a judgment creditor's bill or a bill in aid of an execution issued on the same decree against the owner's husband, who had furnished a large portion of the money for the building.

2. SAME—IMPROVEMENTS ON WIFE'S PROPERTY.

    Where a man becomes insolvent by improving his wife's property with her knowledge and consent, a subcontractor who has furnished the husband 'with material for the improvements can maintain a bill in aid of an execution levied on the land, as well as a judgment creditor's bill.

Appeal from Saginaw; Beach, J.  Submitted December 4, 1902.  (Docket No. 50.)  Decided December 29, 1902.

Creditor's bill and bill in aid of execution by John F. Brand and Clarence H. Brand, executors of the last will and testament of Daniel Hardin, deceased, against James A. Connery and Christiana Connery.  From a decree dismissing the bill, complainants appeal.  Reversed.

In the fall of 1896 defendant James A. Connery made a contract with Boergert & Son to furnish the materials and do the carpenter work on a brick building he was erecting in East Saginaw.  Boergert & Son made a contract with D. Hardin & Co. to furnish the door and window frames and cornice for the outside of the building and the entire inside finish of the building.  The materials for the outside were furnished in the winter and early spring of 1897, and some time in May complainant began the delivery of the inside finish, which amounted to about $750.  D. Hardin & Co. were paid about all the work and material amounted to for the work on the outside, leaving the inside finish alone unpaid.  In May, 1897, Devillo Dennison, who had general charge of the business of D. Hardin & Co., learned that Boergert & Son were not responsible, and, before delivering any inside finish, informed Mr. Connery that they would not deliver any of the material for said inside finish without pay therefor upon delivery, unless he (Connery) would agree to pay for it, which Dennison testifies he did agree to do, but Connery denied, both in his answer and upon the stand, claiming that he only agreed to assist them in getting their pay, and did notify them every time he paid Boergert & Son any money.  While the work was in progress Mr. Connery gave his note for $500, afterwards paid $100 on it, and renewed the note for the balance.  Later he gave his note for the balance due on the contract, of $348.76.  He has paid neither of those sums.

D. Hardin & Co., before the 60 days had elapsed from the date of furnishing the last material, filed their lien on the property, and served a notice thereof, with a copy of their account, upon said Connery. When they commenced to enforce their lien, they learned that the land belonged to Mr. Connery's wife. Said lien suit terminated in a consent decree against said Connery and Boergert & Son for the sum of $888.85 in favor of complainant, and a decree in favor of Mrs. Connery, declaring her land freed from all claim under the mechanic's lien. Later an execution was issued against said James A. Connery and Boergert & Son, which was returned wholly unsatisfied. An *alias* execution was issued later, and levied upon the real estate upon which complainant's building materials were used, viz., lot 7 in block 17 of Hoyt's plat of East Saginaw, in Saginaw county, Mich., and this bill was filed in aid of such execution and also as a judgment creditor's bill. The lot itself was not worth over $1,000, and was entirely unproductive. After the erection of said building it was worth $10,000; and, while defendants occupy one-third as a homestead, the remaining two-thirds yields a gross income of $900 per year. The entire expense of the building was defrayed from the means of Mr. Connery, except $2,500, borrowed on the property, $2,000 of which yet remains a lien on the land.

*Albert Trask* ( *Weadock & Purcell*, of counsel ), for complainants.

*James H. Davitt*, for defendants.

GRANT, J. (*after stating the facts*). 1. We are of the opinion that the decree in the other suit, entered by stipulation, is no bar to the present one. The sole purpose of that suit was to enforce the lien provided by the statute. The solicitors agreed that such lien could not be enforced against Mrs. Connery, and therefore consented to a decree dismissing the bill as to her and to a personal decree against Mr. Connery. There was nothing in the plead-

ings in that suit or in the decree touching the rights of creditors of Mr. Connery to proceed by a bill in aid of execution or by judgment creditor's bill.

2. Mr. Connery had no creditors at the time he made contracts for the erection of this building upon his wife's land. The only facts from which any intent to defraud either Boergert & Son or those who furnished the materials are that Mr. Connery made the contracts in his own name; that his wife knew it; that she furnished no funds; that Mr. Connery did not inform those with whom he contracted that he was not the owner of the building, but did in fact by his conduct treat it as his own, and to this conduct she by her silence assented. It is true that those with whom he was dealing might have ascertained, by examination of the records in the office of the register of deeds, that the record title was in his wife. But even prudent merchants are not always thus careful. We think that complainant had a right to believe that Mr. Connery was the owner of the land, and to deal with him as such. He expended all his means in the erection of the building. By so doing he became insolvent, and had not sufficient left to pay the claim of D. Hardin & Co. The question, therefore, is, Can a person, out of debt and solvent, expend all his means in improving his wife's property, and thus become insolvent, and leave creditors, who have trusted him for materials to be used in such improvements, without redress? Have such creditors a right by suit in chancery to pursue the property of their debtor, which, with the knowledge and consent of his wife, he has expended in improvements upon her property? Counsel have evidently made diligent search, and find no case directly in point. We also are unable to find any authorities decisive of the question, and must, therefore, decide it upon principle.

The case is not within those where there were existing creditors; nor do we think it within the case of *Cole* v. *Brown*, 114 Mich. 396 (72 N. W. 247, 68 Am. St. Rep. 491), and authorities there cited, holding that, where there

are no existing creditors, the voluntary conveyance of property by a husband to his wife is valid, unless conveyed for the express purpose of defrauding subsequent creditors. It is well established that an existing creditor may follow the improvements made by an insolvent debtor to the premises upon which they have been made by the consent of the wife, and that he has a lien upon them for his debt. *Rose* v. *Brown*, 11 W. Va. 122, 137, and *New South Bldg. & Loan Ass'n* v. *Reed*, 96 Va. 345 (31 S. E. 514), and authorities there cited. In all the cases cited by counsel for complainants in which the courts have allowed creditors to follow such improvements the debtor was, at the time of making the improvements, insolvent. Such are the cases of *Lathrop* v. *Gilbert*, 10 N. J. Eq. 344; *Kirby* v. *Bruns*, 45 Mo. 234 (100 Am. Dec. 376); *Newcomb* v. *Phillips*, (Ky.) 9 S. W. 529; *Burt* v. *Timmons*, 29 W. Va. 444 (2 S. E. 780, 6 Am. St. Rep. 664); *Trefethen* v. *Lynam*, 90 Me. 376 (38 Atl. 335, 38 L. R. A. 190, 60 Am. St. Rep. 271).

Mrs. Connery stood by and permitted her husband to enter into contracts enhancing the value of her property many times. She is several times richer than before. She has received the benefit of all her husband's property, and as well the property of complainants to the value of $888.85. Boergert & Son have not received the amount due them from Mr. Connery by about a like sum. This is not a case where a husband has made an absolute transfer of property to his wife, and has afterwards entered into business, contracted debts, and become insolvent. He had transferred nothing to her when his contract with Boergert & Son was made. He had not agreed with her to do so. So far as she was concerned, he might have stopped work at any time, and removed the unused material. The transfer to her was complete only as the work was done, and after the material used had become a part of the realty. Until then it was his, and subject to levy for his debts. He had become insolvent when D. Hardin & Co. furnished the material. She knew that he was

erecting this building as though it were his, though he was in fact erecting it for her. Both are occupying a part of it as a homestead, and living upon the income derived from the other. Both are thus enjoying the benefit of the identical property which was erected in part at the expense of his creditors. The transaction is abhorrent to equity and good conscience. Equity stamps it as fraudulent in fact, though not in intent, and will extend its arm to accomplish justice. The original interest of the wife will be protected.

The decree is reversed, and decree entered for complainants, with costs of both courts.

The other Justices concurred.