## John Grigaitis, Appellee, v. Kazimiers Gaidauskis and Mariona Gaidauskis, Appellants.

### Gen. No. 24,118.

1. LIENS, § 4*—*when equitable created by oral promise to give mortgage.* Where one furnishes money for the purchase of certain property upon an oral promise of a mortgage on such property, an equitable lien upon the property is thereby created which will be treated in equity as an actual mortgage.

2. LIENS, § 4*—*when evidence shows loan as promise to give mortgage.* Evidence examined and *held* to establish a loan from plaintiff to defendants to enable them to purchase certain real estate, and an oral promise by defendants to thereafter execute and deliver a mortgage thereon to secure repayment of the loan, so as to justify the imposition of an equitable lien upon the property.

Appeal from the Superior Court of Cook county; the Hon. DENIS E. SULLIVAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1918. Affirmed. Opinion filed April 30, 1919.

WALTER F. SOMMERS and LAWRENCE A. COHEN, for appellants.

N. W. CAMPELL, for appellee.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal by defendants Gaidauskis from a decree of the Superior Court of Cook county finding that the complainant is entitled to an equitable lien on certain real estate which was purchased by them—in part at least—with money he advanced.

The bill of complaint and amendments allege that complainant loaned to the defendants on or about July 3, 1912, the sum of $1,500, with the express understanding and agreement that the defendants would use said sum in the purchase of certain real estate, which is described as follows:

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

"Lot twelve (12) in Block five (5) in Gage, Le-Moyne Hubbard and others subdivision of the east half (E. ½) of the southeast quarter (S. E. ¼) of Section thirty-two (Sec. 32) Township thirty-nine (T. 39) north, Range fourteen east of the Third Principal Meridian."

That the defendants would thereafter execute and deliver a mortgage thereon to fully secure the repayment to the complainant of said loan together with interest; that the money so loaned was, pursuant to the "original understanding and agreement," invested by the defendants in said property and constituted part of the purchase price; that he had requested the defendants to either repay the sum loaned or else execute and deliver the mortgage provided for in the agreement. The bill concludes with a prayer for a lien on the real estate and that a mortgage be executed thereon by defendants and delivered to complainant, and for general relief.

In their answer the defendants deny the alleged loan of $1,500, or any part of such a sum, but admit buying the property on July 29, 1912, from one August Barz for the sum of $3,000 cash, subject to an incumbrance of $2,500; that the money paid was accumulated from their savings, rents, and the proceeds of the sale of other real estate.

On March 24, 1917, the matter was referred to a master in chancery, and subsequently his report and the evidence were filed in court. It was then ordered that the objections to the master's report stand as exceptions before the court. On March 26, 1917, the defendants executed and delivered to William H. Jarnagan their trust deed of the above described real estate and also certain notes to secure the payment of the sum of $3,000. Thereupon complainant filed his supplemental bill against the Central Manufacturing District Bank and William H. Jarnagan, defendants, charging them, among other matters, with conspiring

with the defendants to incumber the property in question. The Central Manufacturing Bank and Jarnagan filed their answer and, among other things, deny that they conspired to defraud complainant or to cloud the real estate described in the amended bill, but state that they received the notes described for a good and valuable consideration.

The master's report finds that on July 3, 1909, the complainant loaned the defendants the sum of $300, and on July 3, 1912, loaned them the sum of $1,200, and that it was agreed then and there that the loans should bear 4 per cent interest; that these amounts were "to be invested in the purchase of the real estate described in complainant's amended bill"; that the defendants did thereafter on July 29, 1912, so invest said money; "that it was further agreed at the time the loan was so made that they would repay it at the expiration of one year; that it was further agreed that they would give complainant a trust deed or mortgage on the said real estate described to secure said loan"; that the amount due the complainant from defendants on July 9, 1917 (the date of the report) was the sum of $1,801.15; that the defendant Central Manufacturing District Bank, during the pendency of the suit, loaned the defendants $2,432 secured by trust deed to William H. Jarnagan as trustee on the property in question; that the complainant is entitled to an equitable lien on the property to the extent of his claim with interest; that the defendants should repay said amount within 30 or 60 days or the property be sold to satisfy the lien; that the trust deed to Jarnagan is subject to the lien of the complainant.

Defendants filed objections to each finding of the master, all of which were overruled. The court ordered that all exceptions to the master's report be overruled and the report approved and confirmed in all things. A decree was entered on October 22, 1917, in conformity with the master's findings of fact and

law, ordering that the complainant be given an equitable lien upon the real estate described in the amended bill of complainant and the master's report, as security for the payment to him by the defendants of his claim, by reason of his loan to them, amounting to the sum of $1,826.92, together with the master's and stenographer's fees, and that unless payment be made in full within 40 days, the property be sold, etc.

The complainant and defendants are Lithuanians, and testified through an interpreter. Mrs. Gaidauskis is the daughter of complainant's sister. The men when they first came to the United States were laborers. The complainant got employment in a street car shop in the repair gang fixing cars, and for seven years was paid $3 a day up to the time he made the loan to the defendants. His board and lodging cost him $12 a month. Gaidauskis made $2.20 a day, with $3 to $5 extra time each month, for about 6 years. It cost him about $6 a week to live prior to his marriage in 1907, and as another source of income, his wife kept roomers at the rate of $3.50 a month each.

The complainant testified that on July 3, 1912, the defendants asked him to lend them $1,500; that he told them he would let them have $1,200, and that, with the former loan of $300 which he had made them, it would make $1,500; that the same morning he went to get the money out of the three banks in which he had it deposited; that he handed the money to the defendants and said he could lend it for one year; that the interest should be 4 per cent; that they promised that if they did not pay the loan within the year they would give him a mortgage. It was admitted by defendants' counsel at the trial that he examined the bank books and found that the complainant had on deposit in the Peoples' Stock Yards State Bank $921, which was withdrawn by complainant on July 3, 1912; that complainant also had on deposit $210 in Melschavicz's bank, which was withdrawn by complainant on

July 3, 1912; that the complainant also withdrew $100 from Olzewski's bank on the same day.

Melschavicz testified that he was a banker and real estate man and handled the deal in question for the defendants; that defendant Kazimiers Gaidauskis deposited in his bank, according to the entries in his books, on July 3, 1912, the sum of $1,100. The evidence shows that the defendants bought the property in question on July 29, 1912, and paid the sum of $3,000 in cash and assumed an incumbrance, then on the property, amounting to the sum of $2,500.

The defendants, after the purchase of the property, took possession and were occupying it at the time of the trial. Some time during the following 2 years they paid off the $2,500 incumbrance, but failed to pay the complainant. On November 19, 1914, the complainant asked them to execute a note for $1,500 payable to him and a trust deed on the property to secure the same. This they refused to do. The note and trust deed were introduced in evidence by the complainant, the property being described in the trust deed as "929 West 35th place, Lot twelve (12), Block five (5), Gage, LeMoyne Hubbard and others subdivision, east half (E. ½) of the southeast quarter (S. E. ¼), Section thirty-two (Sec. 32), Township thirty-nine (T. 39), North, Range fourteen east of the Third Principal Meridian, situated in the County of Cook in the State of Illinois." Subsequent to the reference of this cause to the master in chancery, a trust deed on the property was executed and delivered by the defendants to one William H. Jarnagan, trustee, and is therefore subject to the rights of complainant, if any.

It will not be necessary to consider the evidence in regard to the loan of $1,500 by the complainant to defendants, although it is denied *in toto* by both defendants, as the proof on that point is ample and not even questioned by their counsel in their brief.

Two defenses were urged by the defendant: First,

that the property, on which the lien is claimed, is not sufficiently designated. Second, that the alleged oral agreement to give a mortgage is too vague and indefinite to be enforced in equity. Counsel lay stress on the fact that a sufficient description of the property in question nowhere appears in the testimony of the complainant. They point out that it is only referred to by complainant as a brick property for six families located at 35th and Gage street "now occupied by" defendant. Defendant, Gaidauskis, testified that he lived at 929 West 35th place and that he had lived there since July 29, 1912; that they bought the property for $5,500, paying $3,000 cash and assumed an incumbrance of $2,500. The defendants, in their answer, admit the purchase of the property on these terms and give the same legal description as that set out in the bill of complainant. It is not denied specifically by the defendants that the complainant presented to them for execution the trust deed and note introduced in evidence by the complainant, in which the legal description of the property is the same as that of the bill, and is described as being situated at 929 West 35th street. It is not denied by the defendants that Gaidauskis told the witness Dominic Stankus, in August, 1914, when the latter went to buy the property in which they were living, 929 West 35th street, that they owed complainant $1,500, and that complainant had a mortgage of $1,500 on the property, and that they were paying 4 per cent interest on the loan. The uncontradicted testimony of this witness on the most important questions of fact involved in the case fairly sustains complainant's contentions and identifies the property. Other witnesses testified to admissions of a somewhat similar kind by the defendants.

Counsel for the defendants cite one case in support of their contention that an oral agreement to give a mortgage is too vague and indefinite to be enforced in equity. *Meixel v. Meixel,* 146 N. Y. Supp. 587. In

the latter case there occurs the dictum. "A lien upon land cannot be created by an oral agreement to give a mortgage," etc. That might seem to be important, were it not for the fact, however, that the decisive question in that case was whether a widow by reason of such an agreement could be deprived of her dower. The facts were, in that case, that the agreement to give the mortgage—to which agreement she was not a party—was not made until 3 years after the defendant's husband had acquired a half interest in the property. "Obviously, under such circumstances," the court says, "it had no effect upon her dower rights." In *Payne v. Wilson*, 74 N. Y. 348, the court says: "It has been held, that an agreement for a mortgage is, in equity, a specific lien upon the land." Citing, *In re Howe*, 1 Paige (N. Y.) 125; *Chase v. Peck*, 21 N. Y. 581. In the case of *Sprague v. Cochran*, 144 N. Y. 112, the court says: "There can be no doubt upon the authorities that where one party advances money to another upon the faith of a verbal agreement by the latter to secure its payment by a mortgage upon certain lands, but which is never executed, * * * equity will impress upon the land intended to be mortgaged a lien in favor of the creditor who advanced the money for the security and satisfaction of his debt. This lien attaches upon payment of the money." The court in support of its decision then cites, among others, the following cases: *Perry v. Board of Missions*, 102 N. Y. 99; *Smith v. Smith*, 125 N. Y. 224. The law is well stated in Pomeroy's Equity Jur. sec. 1237: "The form or particular nature of the agreement which shall create a lien is not very material, for equity looks at the final intent and purpose rather than at the form; and if the intent appear to give, or to charge, or to pledge property, real or personal, as a security for an obligation, and the property is so described that the principal things intended to be given or charged can be sufficiently identified, the lien follows." That lan-

guage has been quoted and sanctioned in many cases in various jurisdictions. Where one furnishing a consideration is promised a mortgage on certain specified real estate, an equitable lien is thereby created. Pursuant to the maxim that equity will consider that which ought to be done as already in being, the promise to give a mortgage to secure a loan may be treated as an actual mortgage. *Lohmeyer v. Durbin,* 206 Ill. 574.

The master found the facts, and we do not feel justified, upon the record as it appears before us, in finding otherwise; also, the principles which were applied thereto, by the chancellor, were, in our judgment, according to the law. Under the circumstances we are bound to affirm the decree.

*Affirmed.*