### SCHRAM v. BURT.

No. 8069.

Circuit Court of Appeals, Sixth Circuit.

May 6, 1940.

---

Edward M. Brown, of Cincinnati, Ohio (Robert S. Marx, Frank E. Wood, Lawrence Levi, Edward M. Brown, and Nichols, Wood, Marx, & Ginter, all of Cin-

cinnati, Ohio, on the brief), for appellant.

Harry H. Wait, of Detroit, Mich., for appellee.

Before HICKS, ALLEN, and HAMILTON, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a decree of the District Court denying the appellant either a mortgage or equitable lien on real estate owned by the appellee. The facts out of which the controversy arises are substantially as follows:

On July 26, 1926, George W. Burt and the appellee, Harriet S. Burt, husband and wife, acquired a vacant lot in Detroit, Michigan, by warranty deed and became the owners as tenants by the entirety. They contracted for the lot in the spring of 1926 and employed Frank Elwell to build a house on it, who commenced its construction in May, 1926, on the basis of cost, plus a fee. Appellee left the details of construction and financing to her husband.

George W. Burt applied for and procured from the Redford State Savings Bank of Detroit, a loan to build the house to be secured, when completed, by a mortgage on the lot and improvements. Albert A. Bruder, cashier of the bank, approved the loan and at various times between August 5, 1926, and September 9, 1926, credited to the checking account of Burt a total of $9,000. On September 9, 1926, Burt presented to Bruder an apparent joint note of himself and wife for the $9,000, payable to the bank and secured by a mortgage on the property. Bruder, as a notary, took the acknowledgment of Geo. W. Burt, to the instrument and also purportedly took that of appellee. It subsequently developed that appellee neither signed the note nor signed and acknowledged the mortgage and that Bruder's certification was false. Appellee had a checking account with the bank and Bruder was well acquainted with her signature. She and her husband took possession of the premises September 6, 1926, and occupied it as a home until the death of George Burt September 21, 1931, and since that time she has continued to occupy it.

Appellee qualified as administratrix of the estate of her husband, which estate had a value of approximately $150. The administration was closed April 28, 1932, and she was discharged, no claim being filed against the estate by the appellant or any representative of the Redford State Bank, or its assignees.

On May 5, 1931, the Redford State Savings Bank, for a valuable consideration, transferred the note and assigned the mortgage to the First National Bank of Detroit, which is in liquidation under the National Banking Act with appellant, B. C. Schram, receiver, and among the assets which came into his hands was the note and mortgage. The maker defaulted in payments on the note September 1, 1930, and since that time none has been made. The First National Bank of Detroit and the appellant have paid $1,546.25 taxes, insurance and other carrying charges on the property.

In November, 1931, appellee ascertained the fact that her signature was on the note and mortgage, and about this time appellant claims that, through his agent, Schindler, she was interviewed about her indebtedness to the bank, which included another note secured by a mortgage on another piece of property, and at that time she was silent about the genuineness of her signatures. She was again interviewed by an agent of the receiver in September, 1934, about the present mortgage and made no claim that her signatures were not genuine. She said she had an income of $50 a month and that her son could not help her and she was unable to pay the note. Appellee denied she knew or had ever talked with Mr. Schindler. She admits the conversation with the agents of appellant, but claims it was about the other note and mortgage, which it was attempting to collect.

On October 5, 1932, the Sherwood Insurance Agency sent the First National Bank an insurance policy covering the property in question with a mortgage clause attached in favor of the Redford State Savings Bank. Appellee says she at no time had this policy in her possession and did not know it was sent to the bank, although she said she paid some premiums to the Sherwood Agency. George W. Merritt testified he was an agent for this insurance company and knew George Burt and that it sold him an insurance policy covering this property.

Appellant instituted this action December 31, 1934, for a simple foreclosure and

on January 18, 1935, appellee answered and denied she had executed either the note or mortgage. Thereupon, appellant amended his petition and alleged that under the facts and circumstances of the case, the Redford State Savings Bank of Detroit had acquired an equitable mortgage and further that appellee had authorized, ratified and affirmed her husband's action in obtaining the loan and, by such conduct, was liable as a principal. He also plead that if these claims were unavailing, the execution of the joint deed creating a tenancy by the entireties was a fraud on creditors and, if not, appellee had been unjustly enriched by the use of the bank's funds in the building of the home and its receiver was entitled to an equitable lien on the premises for the expenditures thus made. The lower court found against appellant on all of his contentions except it adjudged a lien to him for $1,546.25 on account of taxes and insurance paid on the property. Appellant appeals from this decree and urges on us the same contentions as in the court below.

■ The nature of estates by the entireties is generally well understood. They are simply a form of co-ownership, a sui generis estate held by husband and wife. Such estates became a part of the bulk of the common law of Michigan. Their genesis lies in the maxim "man and wife are as one person." As a consequence of this relationship, many incidences flow therefrom quite different from those arising from a joint tenancy or any other form of co-ownership. The several married women's acts of Michigan have not disturbed the fundamentals of the common law estate, though they have materially affected the incident of the husband's control. Fisher v. Provin, 25 Mich. 347; Dickey v. Converse, 117 Mich. 449, 76 N.W. 80, 72 Am.St.Rep. 568; Morrill v. Morrill, 138 Mich. 112, 101 N.W. 209, 110 Am.St.Rep. 306, 4 Ann.Cas. 1100. The nature of such estates prevents their sale or disposal, or any part thereof, by either the husband or wife without the assent of both. The whole remains to the survivor. Neither can convey, encumber or at all prejudice such estates without the consent of the other. The unity of the husband and wife as one person and the ownership of the estate by that person prevents the disposition of it otherwise than jointly. However, the rule prevails in Michigan that an estate by the entireties is subject to all the equities of creditors of the co-ownership. Newlove v. Callaghan, 86 Mich. 297, 48 N.W. 1096, 24 Am.St.Rep. 123; Lemerise v. Robinson, 241 Mich. 528, 529, 217 N.W. 911; Rossman v. Hutchinson, 289 Mich. 577, 286 N.W. 835.

Appellee and her husband conceived the idea of building their new home in the spring of 1926 and together talked to the contractor about the type of structure and, in May of that year, the construction was begun, the cost being paid out of moneys loaned by the Redford State Bank. The grantors executed the deed to the appellee and her husband July 26, 1926, which was recorded September 16, 1926. All of the money was advanced by the bank before the deed and mortgage were put to record, but its cashier knew before the money was advanced that the deed to the property created an estate by the entireties and the bank caused both the deed and mortgage to be recorded.

■ If the facts show that the assignor of appellant acquired an equitable mortgage, all other questions raised by him become immaterial. The rule is clearly established that where one party advances money to another upon the faith of a verbal agreement by the latter to secure its payment by a mortgage upon certain lands and improvements, which is not executed, or which, if executed, is so defective or informal as to fall short of being a duly executed mortgage, equity will impress upon such land and improvements a lien in favor of the creditor who advances the money for the security in satisfaction of his debt. The lien attaches on the advancement of the money and for the same length of time as the debt, and waiver may not be implied from the act of the creditor in receiving a mortgage, which, by reason of fraud, inadvertence or mistake, is ineffective as a specific lien nor is the equitable mortgage merged in such instrument subsequently executed. The lien of the party who has advanced money under such circumstances is controlled by the same equitable principles as that of the vendor of real estate for unpaid purchase money, which is based solely upon the equitable doctrine that the vendee who has received the legal title without payment of the purchase money may not hold the estate free from the claim of the seller for its price. In one

case, a party receives the title to real property without paying for it, with or without an agreement that his vendor shall be secured in the payment of the purchase price by a lien upon it by way of mortgage or otherwise. In the other case, the party advances money under an agreement that its payment shall be secured by mortgage upon specific real estate, which agreement remains imperfect. The right of the vendor and the person advancing money upon such an agreement is essentially the same and, for identical reasons, each commends itself with equal force to the conscience of a court of equity.

The doctrine of equitable mortgages is not limited to written instruments intended as mortgages, which, by reason of some formal defect, are inoperative without the aid of a court, but extends also to a variety of parol transactions of that character. It is not necessary in all cases that such agreements as to lands should be in writing to avoid to application of the Statute of Frauds for two reasons: first, because when completed by one of the parties, they are no longer executory and, second, because the statute, by its own terms, does not affect the power which courts of equity have always exercised to enforce specific performance of such agreements. Osgood v. Osgood, 78 Mich. 290, 44 N.W. 325; Abbott v. Godfroy's Heirs, 1 Mich. 178; Whitney v. Foster, 117 Mich. 643, 76 N.W. 114; Grigaitis v. Gaidauskis, 214 Ill.App. 111; Foster Lumber Co. v. Harlan Co. Bank, 71 Kan. 158, 80 P. 49, 114 Am.St.Rep. 470, 6 Ann.Cas. 44; Smith v. Smith, 125 N.Y. 224; Cheff v. Haan, 269 Mich. 593, 257 N.W. 894.

In the case at bar the controversy is between one of the original parties and the assignee of the others who have rested during a long series of years on the situation as it existed at the time the money was advanced. No rights of third parties are involved and no adverse interest has been acquired for a valuable consideration. The whole doctrine of equitable mortgages is founded upon the ancient, cardinal maxim of equity which regards that as done which was agreed to be done and should have been done and in applying this rule the court will treat the subject matter as to collateral consequences and incidences as if the acts contemplated by the parties had been done at the beginning of the transaction, always regarding the substance and not the form.

It is urged on us that appellee did not consent to the creation of the equitable mortgage and that her position is tantamount to that of an innocent purchaser for value and that therefore the trust rule stated above cannot operate to deprive her of any of her interest in the premises. We are unable to adopt this view of the situation.

It is true that where, in pursuance of a contract with the husband, services are performed with respect to the separate property of a married woman or held by the entireties, the relationship between them is not of itself sufficient to justify the inference that he had authority to enter into a contract on her behalf, but the party who seeks to hold her must furnish some affirmative testimony from which the husband's authority may reasonably be inferred. The contract of the husband is binding upon the wife whenever he is shown to have been invested with the power of a general agent with regard to the management of the property or the subject matter of the contract. Owen v. Cawley, 36 N.Y. 600.

Appellee testified that she was under the impression she and her husband were partners and that he was the manager and he attended to all money matters. She knew the house in question was being built under her husband's management and, with him, occupied it after it was completed. She participated in the negotiations which preceded the making of the contract under which the work in question was performed and also knew that money was required for building the structure. We are of the opinion that the only inference to be drawn from the undisputed evidence is that appellee and her husband were acting jointly in the construction of the home and that she constituted him her duly authorized agent in procuring the questioned loan from the bank and authorized him as her agent to agree to place the property in lien to secure the bank for the loan when the dwelling was completed. Compare Arnold v. Spurr, 130 Mass. 347; Eadus v. Hunter, 249 Mich. 190, 228 N.W. 782.

Appellee urges that appellant's claim is barred by the Statute of Limitations and he is estopped to rely on the fraudu-

lent concealment of a cause of action to toll it.

Under the Statutes of Michigan (3 Compiled Laws, 1929, Sec. 13976) all actions in any of the courts of the state shall commence within six years next after the cause accrues. Appellant's cause of action seeking an equitable mortgage was not commenced until September 29, 1936, ten years after the loan in question was made. Appellee insists it is barred and appellant contends the bar of the Statute was tolled under 3 Compiled Laws 1929 (Section 13983) which provides a suit may be instituted within two years after discovery of concealed fraud although otherwise barred by the statute.

It is insisted that appellee's intestate presented to the Redford State Bank the mortgage and note with appellee's alleged signature thereon and that neither it nor its assignors had any knowledge of, or any means of knowing, her signature was spurious until she filed her answer in this action and therefore the six-year Statute of Limitations is inapplicable.

Fraudulent concealment, as used in the Michigan Statute, means the employment of artifice planned to prevent inquiry or escape investigation or mislead or hinder acquirement of information disclosing a right of action and the acts relied on must be fraudulent and of affirmative character. De Haan v. Winter, 258 Mich. 293, 241 N.W. 923.

The Statute of Limitations is a beneficial law when applied according to its true principles. Its intendment was to prevent delay in bringing suit so long that the opposite party would lose or mislay the evidence necessary for his defense or by death forfeit the benefit of testimony of witnesses. It was not intended to protect or shield anyone in the enjoyment of the fruits of fraud.

No one can doubt that appellant's claim, if directed solely against appellee's intestate, would not be barred by the statute, because to so hold would permit him to take advantage of his own wrong which is abhorrent to the administration of justice, so the question resolves, Is the appellee chargeable with the fraudulent concealment of her husband? She did not personally say or do anything in connection with the execution of the note and mortgage from which an inference may be drawn that she personally partic-

ipated in the fraud, nor did she occupy a fiduciary relationship to the Redford State Bank making it her duty to inform it of her lack of liability. Mere silence is not fraudulent concealment but in the present case there is more. Her husband acted as her agent and the money thus procured was expended in her behalf. Brand et al. v. Connery et al., 132 Mich. 88, 92 N.W. 784. We are of the opinion that the evidence clearly supports the conclusion that her husband was acting as the agent of appellee in these matters and she approved of his acts and the circumstances of the case fully support the finding that through her agent she fraudulently concealed the fact that there was a cause of action against her. Leslie v. Jaquith, 201 Mass. 242, 87 N.E. 480; Boro v. Hidell, 122 Tenn. 80, 120 S.W. 961, 135 Am.St.Rep. 857; Lightner Mining Co. v. Lane, 161 Cal. 689, 120 P. 771, Ann.Cas.1913C, 1093; Frohlick v. Carroll, 127 Mich. 561, 86 N.W. 1034.

Appellee bases her claim of estoppel and laches on the fact that the notary who ostensibly took her acknowledgment to the mortgage and accepted the note for the Redford State Bank was its cashier, and he was familiar with her true signature and by the exercise of ordinary care could have known that she had not signed either the note or mortgage. From these facts, she undertakes to apply the well-established principle that whatever is notice sufficient to excite attention and put the party upon his guard, is notice of everything to which an inquiry might have led and when a person has sufficient information to lead him to a fact, he shall be deemed to know it. She argues that the cashier of the bank should have known that her signatures were spurious and that his knowledge was imputable to the bank, and it should have made immediate inquiry as to whether she had authorized the execution of the note and mortgage, and from this, she insists that if her husband practiced a fraudulent concealment on the bank, it has waived any right by reason thereof.

The statute relied on by appellant as tolling limitation "was not meant to help parties who take no pains to see what is before their eyes." Purdon v. Seligman, 78 Mich. 132, 43 N.W. 1045. The issue turns on whether the knowledge of the cashier of the bank is imputable to appel-

564

lant. It is a general rule that notice of a fact acquired by an agent while transacting the business of his principal is notice to the latter and this rule applies to banks and other corporations as well as to individuals. It is the duty of the agent to communicate to the principal information thus acquired which would affect the rights of the former and the presumption is the agent has performed his duty in this behalf. If he has not, still the principal should be charged with the knowledge of his agent because he selects him and confides to him the business in hand, but the reason for the rule ceases when the agent departs from the apparent or implied duties delegated to him by his principal.

█ It is assumed that knowledge gained by a cashier of a bank within the apparent scope of his authority is chargeable to the bank as a principal. On the other hand, knowledge acquired by such officer while acting in another capacity, separate and distinct from his duties as cashier, is not imputable to his principal, though they be contemporaneous with the discharge of his official duties. Farmers' & Merchants' Natl. Bank v. Smith, 8 Cir., 77 F. 129.

█ No act done by an officer of a corporation outside of the company's corporate powers is an act which is within the scope of the apparent or customary powers of such officer and binding upon the corporation for that reason. Under the laws of Michigan (Comp.Laws of Michigan, Sec. 1403 et seq.) a corporation is not authorized to perform the functions of a notary public. The distinction between the acts of the cashier of the Redford State Bank in taking the acknowledgment of appellee's husband and his pretension to take hers and as cashier of the bank is clear and there is no showing in the record that he had any knowledge that appellee did not authorize her husband to sign her name to the note and mortgage. The cashier of the bank knowingly participated in the fraudulent concealment of the true facts from the bank and under these circumstances there is no legal inference that he would communicate the facts to his principal, the corporation, and it follows that the knowledge of the cashier cannot be imputed to the bank. American Surety Company v. Pauly, 170 U.S. 133, 150, 18 S.Ct. 552, 42 L.Ed. 977. Compare Deit-

rick v. Greaney, 60 S.Ct. 480, 84 L.Ed. ——, decided February 12, 1940, not yet reported. Appellee's contention is without merit.

The decree of the district court is reversed and the case remanded with directions to award to appellant, in addition to $1,546.25, the amount heretofore awarded by the lower court, the sum of $6,624.74, with five per cent interest from September 9, 1926, until paid, secured by lien on the real estate described in appellant's petition, this being the sum found by the court to have been expended out of the loan from the Redford State Bank for improvements on appellee's property, and for other proceedings in conformity with this opinion.