**WARFEL v. UNITED STATES.**
No. 49160.

United States Court of Claims.

Decided July 9, 1951.

Bernard Shapiro, Los Angeles, Cal., Gendel & Raskoff, Los Angeles, Cal., on the briefs, for plaintiff.

Abner H. Ferguson, Washington, D. C., Watters, Cowen & Baldridge, Washington, D. C., on the briefs, for Third Party Defendant (Bank of Hawaii).

Carl Eardley, Washington, D. C., Newell A. Clapp, Acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

HOWELL, Judge.

MacNeel Pierce and Nathan O. Hulsey, residents of California, formed a partnership known as The Haneel Company. Among other ventures, the partnership undertook the manufacture and sale of certain cameras, commencing production of this item sometime in 1945. Edward A. Bischoff, by arrangement with the partnership, invested $4,000 in The Haneel Company and undertook to sell and distribute the cameras and related items. Originally, Bischoff operated from the Haneel office using The Haneel Company name as well as the name "Tri-Vision Sales Agency" which was chosen to denominate the distributive agency.

On February 25, 1946, Bischoff opened a bank account in the name of Tri-Vision Sales Agency in a branch of the Security-First National Bank of Los Angeles. On the same date there was delivered to that bank written authorization (reproduced in finding No. 5) for the Security-First National to accept the endorsement "The Haneel Company, Tri-Vision Sales Agency. By Ed. A. Bischoff" on any checks or other items payable to or to the order of The Haneel Company and for the bank to pay to Bischoff the amount represented by any item or to deposit them in Bischoff's personal account or in any account he might direct. Said authorization was signed "The Haneel Company, by: MacNeel Pierce."

On April 15, 1946, the Haneel partners, having encountered financial difficulties, made a common law assignment for the benefit of creditors to Charles R. Warfel, the present plaintiff. Mr. Warfel notified creditors and taxing agencies of the United States, but neglected to notify other inter-

ested parties or to record his assignment. The credible evidence establishes that the assignment brought about little immediate change in the relationship of Bischoff to The Haneel Company.

On April 30, 1946, at the suggestion of Hulsey, a Haneel partner, and Campbell, Haneel's comptroller, Bischoff discarded the name "Tri-Vision Sales Agency" and formed what purported to be a new "company," taking the name "Tri-Vision Sales Company." This was done in an attempt to secure certain advantages under the tax laws and the Office of Price Administration regulations. Neither the "Tri-Vision Sales Agency" nor the "Tri-Vision Sales Company" was incorporated; both were fictitious names (properly registered in compliance with California law) under which Ed. A. Bischoff chose to do business. For all intents and purposes Ed. A. Bischoff, Tri-Vision Sales Agency, and Tri-Vision Sales Company are the same entity.

For several months after the formation of the Tri-Vision Sales Company Bischoff and The Haneel Company (which was then controlled by plaintiff) continued to conduct their business from the same address and without substantial change in routine. We must assume that this course of conduct was followed at the direction of Mr. Warfel, the assignee. An agreement signed May 23, 1946, by Warfel and Bischoff, covering procedure between Tri-Vision Sales Company and Haneel, made a statement of distinction between the two organizations, but this internal agreement did nothing to disturb the appearance of continuity; certainly, it was not brought to the attention of those who dealt with either Haneel or Bischoff.

█ In the summer of 1946, Bischoff moved the office of Tri-Vision Sales Company to new quarters, at a different address from that occupied by The Haneel Company. By this time, The Haneel Company had largely withdrawn from the camera business and was doing business as the Plastic and Rubber Products Company (fictitious name registered under California law; the Haneel partnership and its assignee were the true proprietors). Bischoff was then engaged in making certain adjustments with respect to defective cameras previously sold by The Haneel Company, and there was associated with him in the business one James V. Keys. At about this time mail addressed to The Haneel Company began being forwarded by the postmaster to Bischoff at the Tri-Vision Sales Company address. Apparently, this was done at the direction of Campbell, Haneel's comptroller, after a discussion with Bischoff. It has not been shown that Campbell acted without authority, and, although the assignee (plaintiff) denied knowledge that Haneel mail had been directed to Bischoff, the knowledge of his agent, Campbell, must be imputed to him. The principal is affected by the knowledge which an agent has a duty to disclose to the principal to the same extent as if the principal had the information. Restatement of Agency, Sec. 275.

In March 1946, a shipment of cameras had been sold to an Hawaiian installation of the United States Navy. Payment was slow, and it was not until December 19, 1946, that the Navy drew its check in the amount of $14,005.30 on the Bank of Hawaii and forwarded it by letter addressed to The Haneel Company. Pursuant to the above-mentioned arrangement, the letter was delivered to the office of the Tri-Vision Sales Company in due course of mail. There it was opened by Keys who, finding the check, contacted Bischoff and asked what he should do with it. Bischoff instructed Keys to deposit it in the Security-First National Bank account of Tri-Vision Sales Company. Keys did this, placing thereon the endorsement:[1]

> The Haneel Company
> By James V. Keys, Co-Owner
> 44 Pay to the Order of 44
> Security-First National Bank
> of Los Angeles
> Tri-Vision Sales Company

The Security-First National Bank credited the account of Tri-Vision Sales Com-

1. See finding No. 9.

pany with the amount of the check, and eventually the check was paid by the drawee Bank of Hawaii.

A short time thereafter, Warfel, the assignee, learned of the receipt and deposit of the Navy check in the Tri-Vision Sales Company account, but has never taken action against Bischoff based upon that transaction, nor has Warfel ever demanded the proceeds of the check from Bischoff. On the other hand, in a settlement of differences between Bischoff and The Haneel Company (Warfel, assignee; Pierce and Hulsey, partners) on November 20, 1947, it was agreed that no compromise or settlement concerning the check was being made except that the assignee reserved to himself all rights he might have against the United States Navy or any bank involved in the transaction. Warfel then commenced this action against the United States on the theory that The Haneel Company has never been paid; that Keys' endorsement was a forgery; and that plaintiff as payee is entitled to bring this action against the United States, as maker of the check, payment having been made to another upon the basis of a forged or unauthorized endorsement. The United States, as defendant, contends that the Keys' endorsement was sufficient to pass title and that it is not liable. In the alternative, the United States has brought in the Bank of Hawaii as third party defendant contending that if the United States should be judged liable, judgment should, in the same action, be rendered against the Bank of Hawaii which would, in turn, be liable to the United States for having paid on a forged endorsement.

Plaintiff's petition must be dismissed. At the time the Navy check was deposited with the Security-First National Bank, Bischoff had either real or (as far as the bank was concerned) ostensible authority to do so. The act of Keys was the act of Bischoff. The check was mailed to The Haneel Company and delivered, in accordance with the instructions of responsible agents of that company, to Bischoff who dealt with it in accordance with the written authorization of The Haneel Company. The Security-First National became a holder in due course and the instrument was paid in due course of business. If there was a diversion of funds within the Haneel organization, the proper defendant is not before this court.

The foundation of our decision is that Bischoff, on the day the Navy check was deposited in the Tri-Vision Sales Company account, was the real or ostensible agent of plaintiff; that Keys (who actually endorsed the check) was the agent of Bischoff; and that there was, thus, no forgery.

Upon the date that MacNeel Pierce delivered written authorization to the Security-First National Bank allowing Bischoff to endorse and deal with checks payable to The Haneel Company, there was no doubt that Bischoff was the general agent of The Haneel Company, empowered to endorse in blank and to deposit to his own or to any other account the proceeds of any item drawn in favor of The Haneel Company. In theory, at least, Bischoff's agency was terminated by the assignment to the present plaintiff. However, Bischoff's apparent agency was not so terminated. Restatement of Agency, Sec. 108, Comment a. Further, Warfel, the assignee, retained Bischoff in his accustomed role, and neglected, for a considerable period, to notify anyone except creditors and taxing authorities of the assignment. Whatever advantages plaintiff might have gained by following the statutory provisions for the recordation of assignments we need not determine since he contented himself with a common-law assignment. While we do not question the legality of such an assignment in California, it is apparent that one who follows such a course bears the risk of notifying interested parties. No convincing evidence has been presented that the Security-First National Bank or any of the parties now before the court had notice of Haneel's assignment to Warfel. We are thus of the opinion that Bischoff became the assignee's agent and that as far as the bank was concerned possessed at least apparent authority to transact business in the same manner as before the assignment. Buttressing this view is the fact

that Warfel, although in control of Haneel's operations for more than eight months before the encashment of the Navy check, took no step to cancel Bischoff's authority with the bank or to stop the forwarding of Haneel mail to Bischoff. It is evident to us that plaintiff either (1) approved of and acquiesced in this manner of doing business, or (2) by his own negligence made the fraud (if any) complained of possible. California recognizes the familiar rule of law that where one of two innocent persons must suffer, the loss should be borne by him whose acts made the loss possible. Safeway Stores, Inc. v. King Lumber Co., 1941, 45 Cal.App.2d 17, 113 P.2d 483, 486.

The law forbids the principal to deny authority in the agent where his own conduct has invited those dealing with him to assume that the agent possessed such authority. Phillips v. Mercantile Nat. Bank of City of New York, 140 N.Y. 556, 35 N.E. 982, 23 L.R.A. 584. Where, as here, a principal reduces or negates an agent's authority, but fails to notify those who have dealt with the agent under his former full authority, and where the agent continues to be clothed with the appearance of full authority, third persons acting in good faith and without notice of, or any reason to suspect, any limitations of his authority are entitled to rely on such appearance. Safeway Stores, Inc. v. King Lumber Co., supra, citing Leavens v. Pinkham & McKevitt, 164 Cal. 242, 128 P. 399; Calif.Civ. Code, Sec. 2300; Restatement of Agency, Sec. 128.

It is contended by plaintiff, assuming Bischoff's authority to have cashed the Navy check at the Security-First National Bank by placing thereon the exact endorsement called for by the authorization card on file there, that: (1) Keys, not Bischoff, cashed the check; (2) the endorsement used was not the authorized one. We have considered plaintiff's contention that Keys' endorsement was a forgery and have consulted the cases cited by plaintiff's brief for the proposition that, "Authority to endorse is to be strictly construed and banks pay

to unauthorized endorsers at their peril." The cases relied upon by plaintiff deal with situations wherein an agent is authorized to endorse specially (usually for deposit to the credit of the principal), and where the agent endorses in blank and converts the proceeds. Such is not the situation here. In fact, we find in one of these cases the observation of New York's Judge Pound that "if the principal has been negligent or has ratified the conduct of his agent, the law will not shield him". Standard Steam Specialty Co. v. Corn Exchange Bank, 220 N.Y. 478, 116 N.E. 386, 387, L. R.A.1918B, 575.

The instant case is more closely analagous to the facts of Beeson-Moore Stave Co. v. Clark County Bank, 160 Ark. 385, 254 S.W. 667. In that case it was held that the rule of *injuria sine damno* applied when the proceeds of a check paid on a forged endorsement benefited the payee in exactly the same way as they would have had the endorsement been authorized. There is no question here but that Keys acted for and in accordance with Bischoff's directions. The plaintiff himself admitted this in paragraph three of his compromise with Bischoff (see finding No. 11). We have held above that Bischoff had at least ostensible authority to deal with the check as it was dealt with. Although the endorsement accepted by the bank differed from that on the authorization card, the money went into exactly the same account that it would have had the endorsement followed strictly the authorization. There was no injury to plaintiff occasioned by the fact that Bischoff deposited through an agent. If any wrong has been done plaintiff, it results from his agent's (Bischoff's) departure from instructions. Plaintiff's remedy in that situation is against Bischoff, not the United States.

It is so ordered.

JONES, Chief Judge, and MADDEN, WHITAKER, and LITTLETON, Judges, concur.