TRADERS & GENERAL INSURANCE COMPANY, a corporation, Appellant,

v.

Martha CHAMP, Helen Claassen, Frank Dueck, Gerry Dueck, Frederick Dueck, William Dueck and Margaret Dyck, Appellees.

No. 14191.

United States Court of Appeals Ninth Circuit.

Sept. 6, 1955.

Rehearing Denied Oct. 27, 1955.

See 226 F.2d 829.

W. P. Smith, Jr., Jean Wunderlich, Los Angeles, Cal., for appellant.

Joseph C. Smith, Los Angeles, Cal., Champion & Quinn, Paso Robles, Cal., for appellees.

Before POPE, FEE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Alma Louise Williams had an automobile accident on December 5, 1951. The following day, December 6, at Paso Robles, California, she received by registered mail from the appellant, Traders & General Insurance Company of Dallas, Texas, her insurance carrier, a notice that her public liability and property damage insurance was to be cancelled effective 12:01 a. m., December 4, a time already passed. The notice was dated November 28 and was signed by one W. Rowe Verschoyle for Traders. Under Verschoyle's signature appear the words "authorized agent of the company." He seems to have been otherwise not concerned with the sequence of events here involved. The notice was executed and mailed in Los Angeles on November 28, the date it bore. However, the envelope containing this advice of cancellation was addressed to the insured at the address shown on her policy as 572 Crescent Heights Boulevard, Los Angeles, the policy having been issued on August 13, 1951, as of August 1, 1951. By November, Alma Louise Williams was residing at Paso Robles with her husband, Norman I. Williams, then a soldier stationed at nearby Camp Roberts. The notice was forwarded to Mrs. Williams at Paso Robles by the Post Office Department in regular course pursuant to forwarding instructions left with the post office in Los Angeles by her.

One way or another, the appellees, Champ, Claassen, Dyck and the Duecks claim rights against Mr. and Mrs. Williams as a consequence of the accident.

Traders, desiring to know its position under the policy, filed an action for declaratory judgment against the Williamses and those claiming damages against them resulting from the collision. For reasons to which we shall return, the trial court held the cancellation of the policy ineffective, at least prior to actual receipt of notice, and this decision was made in the face of a cancellation clause in the policy which reads as follows:

"This policy may be cancelled by the named insured by surrender thereof or by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice and the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such notice either by the named insured or by the company shall be equivalent to mailing." [1]

The legal reasons for the decision are projected from the findings of the trial judge that notice, written and oral, of her change of address from Los Angeles to Paso Robles had been given to the agency where Mrs. Williams bought the automobile and the insurance policy at times prior to November 28, the date of dispatch of the formal advice of cancellation.

Facts concerning the automobile agency must be detailed. The insured's car, a second hand 1949 Oldsmobile, was purchased from Phil Rauch, Inc., a Stude-

---

1. The policy also contained the following non-waiver clause:

"19. Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of the policy; nor shall the terms of the policy be waived or changed except by endorsement issued to form a part of this policy, signed by an authorized representative of the company."

baker dealer at 718 South San Fernando Boulevard, Burbank, California, under the usual conditional sales contract. Phil Rauch, individually, appears to have had a number of business hats, all at 718 San Fernando Boulevard or nearby. There was his automobile sales agency, above mentioned. Then he had an insurance department, Consumers Insurance Agency, Inc. (The sales agency had a California license to sell insurance and so did Phil Rauch himself.) It is clear that Rauch individually beneficially owned both Phil Rauch, Inc., and Consumers' Insurance Agency. The companies were housed together and all intertwined. One Dalton Le Riche was the manager of all of Rauch's insurance business, whatever name was used. On the record, all communications from Rauch concerning the Williams policy were in the name of Consumers. The evidence indicates that the Williamses dealt with Consumers for what it was—part of Rauch.

In the office of the Insurance Commissioner of California from 1947 to 1952, there was considerable "put and take" in designating this or that arm of Rauch as agent of Traders. Consumers and Rauch himself had been officially agents of Traders until June, 1951. After June, 1951, until June, 1952, Phil Rauch, Inc., remained officially an agent of Traders, although apparently Le Riche thought all officially designated agency for any of Rauch's capacities had been terminated. Consequently, Le Riche was placing the Consumers-Rauch insurance business with Traders through one Robert I. Saunders, Los Angeles, another agent of Traders in Los Angeles. Apparently he who actually signs the policy is designated the "broker" in the insurance lexicon.

The Williamses never knew Saunders, we take it, and never realized he was involved in their transactions.[2] From July, 1951, to January, 1952, the chain of dealing from customer to Traders seems to have been from customer to Consumers to Rauch to Saunders to the Los Angeles office of Traders or the same order in reverse, depending on whether correspondence was moving up or down. From the foregoing summary of the facts of the interrelation of the Rauch enterprises, it is evident that they should be treated as one and that Le Riche should be held here to have been acting for all sides of Rauch's business personality.

Traders had a reason for electing to cancel the policy, as well as a legal right to do so. Mrs. Williams was only eighteen years of age. It did not choose to insure persons of that age. The policy was issued in the belief that she was twenty-one, a misunderstanding apparently not caused by her.

Having decided to cancel, the Los Angeles office of Traders wrote Saunders, the issuing agent, to "pick up" the policy. Saunders passed the request to "pick up" the policy to Consumers. Consumers in turn, on November 9, 1951, wrote Mrs. Williams that Traders was going to cancel the policy because she was a minor. The letter was forwarded to Paso Robles. Meanwhile, Mrs. Williams insists that in the early days of October she and her husband by mail had notified Rauch, Inc., of their change of address. Receipt of the letter was denied by employees of Rauch, but the trial court found that this notice was mailed to Rauch, Inc.

2. The address of Saunders, whose name appears on the policy as the agent who gave the policy its existence, was not stated. On the second, third and fourth pages of the policy it does appear that the home office of Traders was Dallas, Texas. No street address was given in Dallas. Moreover, no postal zone was given, although postal zoning in Dallas had been in effect about eight years. Also, although the company apparently had a West Coast office in Los Angeles, that fact was not disclosed to Mrs. Williams. No communication until the final notice of cancellation ever went to her from Traders' home office or the West Coast office. The only real address of anyone shown on the policy was that of Rauch's Consumers' Company, evidence by the usual semi-advertising sticker on the outside of the policy.

Shortly after the notice of prospective cancellation was mailed to and received by Mrs. Williams, W. H. Williams, her father-in-law, called Le Riche at Rauch's headquarters on the telephone, the father-in-law then being a resident of nearby Santa Monica. There was discussion about the impending cancellation. That much is agreed. Williams, Senior, says he gave Le Riche the address in Paso Robles of his son and daughter-in-law. Le Riche insists that he was advised only that he, Williams, "was taking it up at the time with me [Le Riche] because his daughter was up in the north with her husband." But the trial court found that the elder Williams did give Le Riche the new address at Paso Robles. It is not this court's function to weigh the evidence. Had the trial court found the notice was not given, we would not disturb the finding. Naturally, the father's talk with Le Riche was inconclusive.

About the same time, the young Williamses made inquiry of an insurance agency in Paso Robles about another policy to replace the old one. They were advised that they should wait until they received the official notice of cancellation and then to bring the notice in to the Paso Robles agent who probably would then write the insurance. It is not contended that no one would have written a new policy.

Of course, we must be guided here by the best appraisal we can make of what the California courts would do with this case.

It may be dehors our business to say so, but a close reading of the record indicates that Traders has a deep conviction that the assertions of the insured that notice was given through Rauch just are not true, that such claims are hand made. Therefore, it fights doggedly on. But the trouble is that the points of conflict in the testimony have been decided against it. Technically, Traders recognizes this in its briefs here.

We assume that if notice of change of address had been sent to the home office of Traders (if Mrs. Williams could have found the home office), no court would have tolerated the literal terms of the policy and let Traders discharge its duty to the insured by sending the notice to the old address. We think that where the company designates an insurance agent to "pick up" the policy, a feature or an aspect of cancellation, the company cannot say only the agent's feet belonged to it while he was on the errand but not his eyes or ears. The agency was not a mere messenger. The California court probably would hold that Rauch's notice was Traders' notice. Also, the prior course of dealing created apparent authority in Rauch to receive notice of change of address.

Or a California court might find an estoppel. The historic elements of estoppel may not fully check out here, but the California courts have usually been most liberal in establishing an estoppel when they find it necessary to do justice. Truck Ins. Exchange v. Industrial Accident Commission, 36 Cal.2d 646, 226 P.2d 583.

Parenthetically, we think if it were ours to decree, there would be no harm in a rule of law that no notice of cancellation (where there was no fraud on the part of the insured) could be effective until it reached the insured, provided the insured had left open the channels of communication to him and had not removed himself an unreasonable distance away.

Appellants here rely heavily on Gendron v. Calvert Fire Ins. Co., 47 N.M. 348, 143 P.2d 462, 149 A.L.R. 1310. That case should be distinguished from this one on its facts. There the notice of change of address, which the company in a way had, was given to an adjuster on the occasion of previous claims against the assured and his policy. The adjuster was a man with a single mission: adjustment of a claim. Such a mission wouldn't necessarily include cancellation, as Rauch's mission did, to which notice of change of address was vital.

Among the many California cases which we have examined are the follow-

ing: Early v. Owens, 109 Cal.App. 489, 293 P. 136; Naify v. Pac. Indemnity Co., 11 Cal.2d 5, 76 P.2d 663, 115 A.L.R. 476; Bankers' Indemnity Ins. Co. v. Industrial Accident Commission, 4 Cal.2d 89, 47 P.2d 719; Irving v. Sunset Mutual Life Ins. Co., 4 Cal.App.2d 445, 41 P.2d 194.

It is our judgment that the reasoning of some other courts on points material here would be received with favor in California. We refer to: Merrimack Mut. Fire Ins. Co. v. Scott, 219 Ark. 159, 240 S.W.2d 666; Prudential Ins. Co. of America v. Saxe, 77 U.S.App.D.C. 144, 134 F.2d 16; Maryland Casualty Co. v. Queenan, 10 Cir., 89 F.2d 155; Connecticut Fire Ins. Co. v. Commercial Nat. Bank, 5 Cir., 87 F.2d 968; New York Life Ins. Co. v. Chapman, 8 Cir., 132 F.2d 688; Schram v. Burt, 6 Cir., 111 F.2d 557; Warfel v. United States, 98 F.Supp. 340, 120 Ct.Cl. 279, and for a collection of apposite cases see 149 A.L.R. 1316.

■ We are satisfied the trial court was correct under California law in holding the cancellation here ineffective, at least prior to receipt of actual notice.

The case is not identical, but our decision in State Farm Mutual Auto Insurance Co. v. Porter, 186 F.2d 834, certainly is pertinent and a harbinger of the result we reach here. The underlying rationale of the case is about the same. There it was held, inter alia, that where admissions against interest were pertinent and relevant to an adjuster's business at hand in attempting to adjust a claim, such admissions were commensurate with the apparent authority which he was exercising and were admissible in evidence. See California Civil Code § 2319.[3]

When Rauch's letter of warning went to Mrs. Williams it was not under the badge of a messenger service; it was the label of him who had serviced the policy for Traders with Mrs. Williams. The notice of change of address given by the father-in-law was sufficiently close in time to the writing of the letter that it could not be said that so much time had elapsed that there was no reason for Mrs. Williams to think that Rauch no longer had his ostensible authority.

Stated another way, if Rauch (Consumers) had authority to write the letter to Mrs. Williams, didn't it have authority to receive a reply? To whom else but Rauch would Traders expect Mrs. Williams to reply? And if Rauch could receive a reply, could Rauch only listen, but not heed?

This is not the case of notice, i. e., knowledge, picked up in some collateral transactions or notice picked up in the breast of another agent not connected with the chore of cancellation. For such, Traders probably would not be chargeable here.

■ In closing this opinion, we believe that we should report that at the threshold of the case we were concerned with the question (not raised by the parties) of whether the lower court, and consequently we, had jurisdiction. Is Canadian Indemnity Company v. Republic Indemnity Company, 9 Cir., 222 F.2d 601, applicable? In this case of Traders, the existence of $10,000 worth of public liability insurance, among other things, is at issue. Also, it appears in the record that there was a death as a consequence of Mrs. Williams' accident, and that one of the parties-defendant seeks as against Mrs. Williams to vindicate the claim growing out of the death. There is more than one claim asserted against her in excess of $3,000. We believe that this case falls on the side where the federal courts do have jurisdiction in diversity cases. See cases cited in per curiam

---

3. California Civil Code, § 2319 is as follows:

"Agent's necessary authority. An agent has authority:

"1. To do everything necessary or proper and usual, in the ordinary course of business, for effecting the purpose of his agency; and,

"2. * * *."

opinion on motion for rehearing in Canadian Indemnity Company v. Republic Indemnity Company, supra.

The judgment is affirmed.