HORVATH *v*. NATIONAL MORTGAGE CO.

1. DEEDS—FORGERY BY FRAUD—NO RIGHTS ACQUIRED UNDER FORGED DEED—NOTICE.
Where the grantor's signature to a deed was procured by fraud it is·in law a forgery, and those who subsequently acquired interests under the forged instrument are in no better position than if they had purchased with notice.

2. SAME—MORTGAGES—NO BONA FIDE HOLDER UNDER FORGED INSTRUMENT.
There can be no such thing as a *bona fide* holder under a forgery, whose good faith gives him any rights against the party whose name has been forged or his heirs.

Appeal from Wayne; Richter (Theodore J.), J. Submitted January 18, 1927. (Docket No. 110.) Decided April 1, 1927.

Bill by Matilda Horvath against Eugene W. Vasvary, James Cash, and the National Mortgage Company to set aside certain deeds and mortgages. From the decree rendered, plaintiff and defendant National Mortgage Company appeal. Reversed, and decree entered for plaintiff.

*O'Brien & Neudeck* (*MacKay, Wiley, Streeter & Tucker*, of counsel), for plaintiff.

*C. E. Gittins* and *D. I. Albaugh*, for defendant National Mortgage Co.

*Groesbeck, Sempliner, Kelly & Baillie* (*Edmund E. Shepherd*, of counsel), for defendant Cash.

*Blain & Martz*, for defendant Vasvary.

[1]Deeds, 18 C. J. §§ 138, 176; [2]Id., 18 C. J. § 176; 14 A. L. R. 316; 12 R. C. L. 146; 2 R. C. L. Supp. 784.

McDONALD, J.   On the 1st of September, 1921, the plaintiff was the owner of two houses and lots in the city of Detroit, Michigan.   She and her husband were Hungarians by birth.   They had but little knowledge of the English language and were entirely ignorant of business matters.   The defendant Vasvary was also a Hungarian, but he was an educated business man, and represented himself to be of large means. and influence.   He and Horvath were members of the same lodge.   He gained Horvath's confidence and persuaded him to have his wife, Matilda, place her property in his hands, representing that he could better care for it, increase the revenues, and by investments. double the money received from the rents.   The plaintiff was persuaded to do this, and for that purpose went to defendant Vasvary's office, where she signed a power of attorney in which Vasvary was appointed to manage the property, and to sell it by deed or land contract for such price, upon such terms, and to such persons as he saw fit.   On the 17th of September, Vasvary again called the plaintiff to his office at which time the following papers were prepared and signed.

> "Detroit, Michigan,
> September 17, 1921.

"Mr. EUGENE W. VASVARY,   .
   "Detroit, Michigan.

*"Dear Sir:*   All the property and money which has come or may come in your possession from a settlement with Dr. John P. Tacey, according to the power of attorney of mine, you have the right to do with it as your best judgment dictates, and I, in this letter, consent to it, also that this money or property shall be handled by you at least one year.

"Invest it if you wish to do so, and I will look to you to give me a financial statement any time I desire it.

"If this investment will take a longer period, I shall

be informed about it, and if I see fit, I will give my consent.

"Yours truly,
(Signed)    "MATILDA HORVATH.

"GEZA HORVATH.
"MARGUERITE SMITH.

"I accepted,
"E. W. VASVARY."

"Detroit, Michigan,
September 17, 1921.

"Mrs. MATILDA HORVATH,
"Detroit, Michigan.

"*Dear Madam:* For one dollar ($1.00) and other valuable consideration, I took your property over and will take over any money which may become due to you from a settlement between you and Dr. John P. Tacey, with the understanding that I will handle this property and money for you for a period of one year, and after this time only if you wish to extend it.

"I will try to invest this money for you, and if the investment shall take a longer period than one year, I will submit the proposition to you for your consent.

"I will furnish you a financial statement from time to time, or any time when you so desire, and I will make my heirs and executors responsible for the values which you invested with me.

"Yours truly,
(Signed)    "E. W. VASVARY."

On the same date Vasvary seems to have procured a warranty deed of the premises from the plaintiff. She denies that she signed the deed, and says that if her signature thereto is genuine, it was procured by trickery. On October 20, 1921, Vasvary executed three mortgages on the property to one Peter Patterson for $1,000, $2,000 and $3,000. The $3,000 mortgage was assigned to defendant Cash. On December 27, 1922, Vasvary executed a warranty deed to the defendant National Mortgage Company, and at the same time received back a land contract to himself as vendee. As a consideration for this transaction, the company paid $1,031.15 in taxes, assumed the two

Patterson mortgages of $1,000 and $2,000 and gave Vasvary $2,368.85. The consideration named in the land contract was $13,000, on which Vasvary made a down payment of $1, and was to pay $120 a month, including interest at 7 per cent. After making one monthly payment he defaulted. The National Mortgage Company began summary proceedings and secured possession of the property, which is valued' at $15,000.

The plaintiff filed this bill to set aside the deed to Vasvary, the deed to the National Mortgage Company, its contract with Vasvary, and the mortgage held by James Cash. On the hearing the circuit judge found that the deed to Vasvary was void, it having been obtained from plaintiff by trickery; that the deed to the National Mortgage Company was merely a mortgage, and that the company was entitled to a lien on the property for the amount of its disbursements. The court also sustained the validity of the mortgage to James Cash. From the decree entered, the plaintiff and the National Mortgage Company have appealed.

The first question to be considered relates to the deed from the plaintiff to Vasvary. Was it a forgery? In determining this question we have not the benefit of the testimony of Mr. Vasvary. He appeared at the hearing only by counsel, and though he did not appeal from the decree which branded him with forgery, his counsel have submitted a brief to this court in which they offer their personal assurance that—

"He is a highly educated man, possessing many good qualities to an outstanding degree. Hastening over legal formalities has often caused him to be misunderstood. Those who understand him, his methods and his failings, do not regard him as crooked. His blunders are those of omission and not of commission. While he may have bungled in the management of this property, he has not the moral turpitude to forge or to conspire and trick plaintiff out of anything."

With all deference to counsel in their voluntary efforts to set us right as to the high moral character of Mr. Vasvary, we are compelled to fall back upon the record for our information concerning him.   He does appear to have had a habit, as counsel say, of "hastening over legal formalities."   And inasmuch as it very conclusively appears by the evidence that he swindled this inexperienced and unlettered woman out of some $30,000, it would seem that his habit of "hastening over legal formalities" was a very profitable pastime with him.   Notwithstanding the assurance of counsel, we find nothing in the record indicating that he was endowed with the slightest degree of moral sense; though, perhaps, he should be commended for declining to testify at the hearing, and thus crowning his forgery with the crime of perjury.   Whether in this he was prompted by caution or conscience his counsel have not advised us.   However, the record strongly indicates that he did not allow the matter of conscience to interfere in the least in any of his business transactions with this plaintiff.   It is not necessary to recite the methods he used in dealing with her.   It is conclusive that he tricked her into signing this deed.   The circuit judge so found.   No other conclusion is possible.

In view of this finding, the case before us is not one of so-called actual forgery, that is, where the signature to an instrument is simulated, but is one where a genuine signature is procured by fraud.   Is the latter in law a forgery, and, if it is, does it operate to defeat the rights of subsequent *bona fide* holders?  On this question there is much conflict in the authorities.   In many jurisdictions it is held that the procuring of a genuine signature to a deed by fraud does not constitute forgery.   Our court has taken a different view, as an examination of the following cases will show:  *Gibbs* v. *Linabury*, 22 Mich. 479

(7 Am. Rep. 675) ; *Anderson* v. *Walter,* 34 Mich. 113; *Crawford* v. *Hoeft,* 58 Mich. 1; *McGinn* v. *Tobey,* 62 Mich. 252 (4 Am. St. Rep. 848) ; *Beard* v. *Hill,* 131 Mich. 246.

The doctrine of these cases was first announced by this court more than 50 years ago, and has never been overruled, though it is at variance with the decisions of many other State jurisdictions.

See annotation to *Austin* v. *State,* 14 A. L. R. 316.

The case of *McGinn* v. *Tobey, supra,* is most applicable. In that case McGinn was tricked into signing a deed by one Navin. McGinn thought that he was signing a lease. His signature on the deed was genuine, but was procured by trickery. The court held that it was a forgery. Justice MORSE, who wrote the opinion, said:

"But we consider this deed clearly a forgery under the best definitions of that offense. Bishop defines forgery to be 'the false making or materially altering, with intent to defraud, of any writing, which, if genuine, might apparently be of legal efficacy or the foundation of legal liability.' 2 Bish. Crim. Law (7th Ed.), § 523. It is the 'fraudulent making and alteration of a writing to the prejudice of another man's rights.' 4 Bl. Comm. 247. The signature to this instrument is genuine, but the body of the deed is false, and the signing of complainant's name, without knowledge of such falsity, cannot cure it and make it a true and valid instrument in the hands of any one. \* \* \*

"It is very evident that the deed of these premises to Navin was not in fact the deed of the complainant. He never meant to execute a deed, and never knew that he had executed one until confronted with his signature to the same after Navin had gone away to escape arrest."

In the instant case the plaintiff never meant to execute a deed to Vasvary. She was not asked to do so. There was no talk between them concerning a

deed. No one testifies that she signed it. Her signature was proven on the hearing by the testimony of handwriting experts. If she signed the deed it was at the same time that she signed the letter appointing Vasvary her agent. Through some clever manipulation of the papers by Vasvary, she evidently signed the deed. He is the only person who knows how it was done, and he declines to testify. We can see no reason for any distinction between the act of simulating a signature and procuring the signature as Vasvary did in this case. The effect is the same. The deed was in law a forgery. And those who subsequently innocently acquired interests under the forged instrument are in no better position as to title than if they had purchased with notice. *Crawford* v. *Hoeft, supra.*

"There can be no such thing as a *bona fide* holder under a forgery, whose good faith gives him any rights against the party whose name has been forged or his heirs." *Austin* v. *Dean*, 40 Mich. 386.

See, also, *Lee* v. *Kellogg*, 108 Mich. 535.

As to the power of attorney, it is clear that it was obtained by Vasvary in the same fraudulent manner as the deed. At the time her signature was procured, she was at Vasvary's office for one purpose only, and that was to execute any papers that was necessary to empower him to manage the property for her, collect the rents and invest them. She did not intend to invest him with authority to sell her property, and when she signed the power of attorney she had no knowledge that it contained any such provision. It was only another instance of Vasvary's habit of "hastening over legal formalities." It was not recorded, and was not used or relied on by any of the parties to subsequent transactions.

In view of the conclusion we have reached, the plaintiff's property should be restored to her, the mort-

gage to defendant James Cash, the deed to defendant National Mortgage Company, and its contract with Vasvary are void and should be set aside; and the National Mortgage Company should account to the plaintiff for the rents which it has received from her property.

A decree will be entered in this court in accordance with this opinion.   The plaintiff will have costs against the National Mortgage Company.

SHARPE, C. J., and SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.   BIRD, J., did not sit.