MATTHEWS v. ALUMINUM ACCEPTANCE CORPORATION.

1. EVIDENCE—HEARSAY—ALUMINUM SIDING—FORECLOSURE OF MORTGAGE.

Rule that hearsay evidence will not be admitted *held*, inapplicable as to statements made by agents of promisee of note in an effort to get promisors signed up for application of aluminum siding on their home in suit by promisors against transferee of note to enjoin foreclosure of the accompanying mortgage and of which defendant sought foreclosure on its counterclaim, such statements not having been offered as evidence of the truth of the matter contained therein.

2. SAME—PURPOSE OF HEARSAY RULE.

The hearsay rule is designed to keep out testimony of a human utterance that is offered as evidence of the truth of the fact asserted in it as then the credit of the assertor is not tested by cross-examination.

3. MORTGAGES—EXECUTION—INTENT—FINDING OF TRIAL COURT—EVIDENCE.

Finding of trial court in nonjury action to enjoin foreclosure of mortgage plaintiffs had executed, that they had not intended

_____

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur, Evidence § 457.
[2] 20 Am Jur, Evidence § 452.
[3] 36 Am Jur, Mortgages §§ 87, 126.
[4] 23 Am Jur, Forgery § 14.
  Procuring signature by fraud as forgery.  14 ALR 316, 56 ALR 582.
[5] 11 Am Jur 2d, Bills and Notes §§ 76, 79.
[6, 7] 55 Am Jur, Usury § 21.
  Advance in price on credit sale as compared with cash sale as usury. 48 ALR 1442, 57 ALR 880.
[8] 11 Am Jur 2d, Bills and Notes §§ 439, 453.
[9] 36 Am Jur, Mortgages §§ 481, 482.
[10] 55 Am Jur, Usury § 108.

to execute mortgage of which defendant sought foreclosure *held,* amply supported by record.

4: BILLS AND NOTES—SIGNATURE DECEPTIVELY PROCURED—FORGERY.
A signature deceptively procured is, in law, a forgery and those who acquire an interest under the forged instrument are in no better position than if they had purchased with notice.

5. SAME—EXECUTION OF NOTE IN BLANK—FILLING IN BY PAYEE.
A note executed in blank gives the payee authority to fill it in if he follows the agreed-upon terms.

6. SALES—CREDIT—CASH—USURY.
A seller may charge a greater price for goods bought on credit than for cash without rendering the transaction usurious.

7. USURY—EVIDENCE OF TRANSACTION INVOLVING LOAN AND PURCHASE OF ALUMINUM SIDING.
Instrument evidencing transaction involving a loan of $650 to plaintiff and application of aluminum siding to their home for *a contract price $3250, down payment $. . . ., cash on or before completion $. . . ., balance of $3250, plus finance charges payable in 84 equal monthly instalments at the rate of $61.04 monthly, the first instalment due 60 days after date of contractor's designated completion of said work, held,* usurious.

8. BILLS AND·NOTES—HOLDER IN DUE COURSE—NOTICE OF USURY.
Transferee of note and agreement which on its face gave notice of the infirmity of usury was not a holder in due course.

9. MORTGAGES—EXECUTION—CANCELLATION.
Mortgage on plaintiffs' premises was properly canceled by trial judge, where it appears plaintiffs were unaware they were executing a mortgage.

10. USURY—JUDGMENT—CANCELLATION OF EXCESS.
Judgment for amount of obligation plaintiffs intended to assume, less payment they had made, is ordered affirmed, the usurious excess being canceled.

Appeal from Kent; Hoffius (Stuart), J. Submitted Division 3 June 14, 1965, at Grand Rapids. (Docket No. 189.) Decided October 18, 1965. Rehearing denied November 18, 1965. Leave to appeal denied by Supreme Court February 15, 1966. See 377 Mich 702.

Complaint by Robert L. Matthews and Katherine Matthews against Aluminum Acceptance Corporation to enjoin enforcing claims against plaintiff on a promissory note and to enjoin foreclosure of a mortgage. Counter claim by defendant for face amount of note. Judgment for plaintiffs on mortgage and partial judgment for defendant on note. Defendant appeals. Affirmed and remanded with instructions.

*Thomas D. Anderson, Jr.,* for plaintiffs.

*Rhoades, Garlington, McKee & Boer (F. William McKee,* of counsel), for defendant.

FITZGERALD, P. J. If ever the elements of a classic case involving an aluminum siding company and its subsequent assignee were before an appellate court, that case unravels here. It could be drawn from the files of almost any practicing lawyer or it might be the plaint of the next client in the waiting room. Suffice it to say that we have before us a case that sorely tries the postulates of judicial reasoning.

In this action to enjoin defendant from enforcing any claims against plaintiffs and from foreclosing the mortgage upon plaintiffs' home, the questions on appeal are whether out-of-court statements made by parties not present are hearsay, whether constructive forgery or fraud was established, and whether the entire transaction was shot through with usury.

In April of 1962, plaintiffs Robert and Katherine Matthews were approached by representatives of All-Style Builders, aluminum siding applicators. They allege that All-Style indicated that their modest home had been chosen as a demonstration site for aluminum siding for that area. New siding was to be applied over the tar paper on their home, and

in addition they were to be given a loan of $650 in cash to fix their tractor and the total price for this was to be $3,250. Further, they were to receive $100 to apply against their contract for each potential customer which All-Style brought to view their newly-sided house.

To the Matthews, the alleged inducements were sufficiently alluring that they signed up for the package. The siding was applied, they were given $650, but to time of trial, no one had ever shown up to view the siding as a potential customer.

When the smoke cleared, so to speak, the Matthews learned that the instruments they had signed included a promissory note and mortgage calling for 84 equal monthly instalments at the rate of $61.04 per month for a grand total of $5,127.36, not the $3,250 they had anticipated, and the instruments had been assigned to defendant Aluminum Acceptance Corporation, a firm specializing in financing siding application.

All-Style Builders is not a party to this suit and defendant Aluminum Acceptance claims it is a bona fide holder of the paper, denies fraud, and further claims that the instruments are not usurious because the agreement provides for a cash price, whereas the note and mortgage represent a "time price" and are a discount transaction.

As to the transaction itself, Mr. Matthews says that he was unable to read any but the largest print, and that only with difficulty, and Mrs. Matthews was able only to read the printed portion with her glasses and that the papers were stacked one on top of another at the time of signing and with the upper portions covered, leaving visible only the area to be signed. The papers, they further allege, were blank at the time of signing.

Plaintiffs made only one payment and now seek to enjoin foreclosure of the mortgage and defendant counterclaims, seeking foreclosure, deficiency, and such other relief "as shall be agreeable to equity and good conscience."

The latter phrase is a little difficult to digest when the record is studied closely.

The matter was tried without a jury in March of 1964 and the finding of the trial court was that the mortgage was obtained by constructive forgery, that Aluminum Acceptance was not a holder in due course, and that the note in excess of $3,250 was usurious. Judgment entered canceling the mortgage and giving defendant judgment on its counterclaim in the sum of $3,250. Aluminum Acceptance Corporation appeals this judgment.

The first issue presented is whether the court erred by allowing out-of-court statements made by individuals not present in court nor parties to the suit to be introduced into evidence against the defendant.

Throughout the trial, the judge freely accepted testimony of what statements were made by agents of All-Style Builders to the Matthews in an effort to sign them up for siding, subject, however to timely exceptions taken by defendant's counsel. Though reserving final judgment on whether the matters were hearsay, the court ultimately stated in its opinion:

"Such testimony is not hearsay, as between the original parties and should not be considered as hearsay when offered as a defense to an action brought by one standing in the shoes of the other party."

The spectre of the hearsay rule once again courses through the courtroom furnishing confusion

until finally banished by a brief re-examination of the rule itself.

The Court does not choose to belabor the inherent confusions of the hearsay rule, but will content itself with pointing out that again, it does not apply and that consequently the circuit judge was correct in his conclusion.

Here, appellants sought to introduce certain statements of All-Style Builders, not to prove their falsity or truth, but merely to prove that they were in fact made. Other evidence clearly establishes the falsity of the statements and the documents signed by the Matthews amply show that they were not what they were said to be. In 6 Wigmore on Evidence, § 1766, it is stated:

"The theory of the hearsay rule is that, when a human utterance is offered as evidence of the truth of the fact asserted in it, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand, subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but *without reference to the truth of the matter asserted,* the hearsay rule does not apply."

In the same section, Wigmore includes this telling statement that should be emblazoned on every attorney's note-pad when he begins to deal with the hearsay rule:

"The hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as *assertions to evidence the truth of the matter asserted.*"

In many cases, including the instant one, the fact in controversy is whether such statements were made and not whether they are true. *Koch* v. *Production Steel Company* (1955), 344 Mich 161.

We come to the question of whether plaintiffs' proofs established constructive forgery or fraud.

The court, in its opinion states, "This Court is convinced that the plaintiffs did not intend to execute a mortgage. They testified that at no time was there any discussion about the mortgage or that they were encumbering their premises with a lien. There was no testimony in opposition to this."

Not only was there no testimony in opposition, but the record is replete with indications to buttress the plaintiffs' contentions. Never were they asked for an abstract covering the property. The record does not yield any proofs to contradict the finding of the trial court.

The rule in Michigan is stated in *Horvath* v. *National Mortgage Company* (1927), 238 Mich 354 (56 ALR 578), which holds that a signature deceptively procured is in law a forgery and those who subsequently acquire interest under the forged instrument are in no better position than if they had purchased with notice. Nor is application of this rule obviated by *Leidel* v. *Ballbach* (1956), 345 Mich 201, which is frequently cited as a limitation on *Horvath,* since in that case the instrument in question was willingly and freely executed.

That the instruments may have been executed in blank has little probative value in the broad consideration of this case. Indeed, there is little question but that a note executed in blank gives the payee authority to fill it in *if he follows the agreed upon terms.* 1 MLP, Alteration of Instruments, § 5. If this is applied to the testimony before us, it would have permitted the payee to fill in the note in the amount of $3,250 which the plaintiffs admit they believed they were to pay.

While the foregoing is important to a thorough knowledge of the case, the aspect which demands the

utmost scrutiny is the allegation of usury. If, indeed, our courts are to be a bourne of reason, it is perhaps time to ask: *Quo vadis?* when faced with a case such as this, involving, as it does, charges of usury in consumer financing.

Differentiation between the necessitous borrower and the credit buyer has led to strange anomalies in the law. The man who goes to a bank, borrows money, and pays for his goods is protected by strict usury laws. The same man who buys "on time" from the dealer himself can find himself paying rates never imagined by the wildest opponents of usury, and this act, too, is legally sanctioned.

We are struck with the clear logic of Mr. Justice TALBOT SMITH in *Wilcox* v. *Moore* (1958), 354 Mich 499, 504, in which he states, "There is no need, at this late date in the law of usury   *   *   *   [with citations] to discuss its rationale. Suffice to say that its purpose is to protect the necessitous borrower from extortion. In the accomplishment of this purpose a court must look squarely at the real nature of the transaction, thus avoiding, so far as lies within its power, the betrayal of justice by the cloak of words, the contrivances of form, or the paper tigers of the crafty. We are interested not in form or color but in nature and substance." We feel that this applies no less importantly to the credit purchaser.

That a seller in Michigan may establish a credit price is not denied and indeed upheld in *Attorney General* v. *Contract Purchase Corporation* (1950), 327 Mich 636, which points out that unless the sale and purchase of property is a mere pretense, the seller may charge a greater price for goods bought on credit than for cash without rendering the transaction usurious.

It is here that Mr. Justice SMITH's "cloak of words and contrivances of form" come into play. The original agreement with All-Style had the following terms:

"Contract price $3250.00, Down Payment $————, Cash on or before completion $————, Balance of $3250.00, plus finance charges payable in 84 equal monthly installments at the rate of $61.04 monthly, the first installment due sixty days after date of contractor's designated completion of said work."

It is noted that the price stated is called the "contract price" and is the sum that the Matthews agreed to pay. Yet they find themselves owing $5,127.36.

We find ourselves agreeing with the trial judge who stated that the agreement might not have violated the usury laws had it been couched in terms substantially as follows:

"$3,250.00 cash price, or $5,127.36 contract price, payable in 84 equal monthly installments at the rate of $61.04 monthly, et cetera."

Had the Matthews been clearly offered a choice of two prices as suggested in *Attorney General* v. *Contract Purchase Corporation* and had chosen the "time price" we would have had another tincture in the case. The case of *Bird Finance Corporation* v. *Lamerson* (1942), 303 Mich 422, reaffirmed by *Gramatan National Bank & Trust Co.* v. *DeGraff* (1965), 374 Mich 148, holds that the type of transaction as we have in the case at bar is usurious. See, also, *Hillman's* v. *Em 'N Al's* (1956), 345 Mich 644.

Appellant corporation also urges that if defendant is a holder in due course it is immaterial whether or not there was fraud in the inducement with respect to the promissory note.

The agreement gave defendant notice of the agreed contract price of $3,250 while the note and

mortgage stated the sum of $5,127.36. Such a disparity furnishes ample notice of the infirmity of the instrument and that it was usurious, rendering it impossible for defendant to be a holder in due course and to avail itself of such defenses as a holder in due course might have.

Concluding his opinion, the trial judge ruled that the plaintiffs agreed to pay $3,250 which included the siding job and the advance of $650 in cash.

He further ruled that the mortgage, having been fraudulently obtained, should be stricken from the record and canceled and held for naught since the plaintiffs had no knowledge that they were executing such mortgage, and all sums in excess of $3,250 should be canceled and held for naught as being usurious.

We feel that the trial court's finding and conclusions are amply upheld by the record and by law. No violence to the laws nor the economy of the State of Michigan are done thereby: the merchant is still free to sell his goods on cash or "time" prices—so long as the consumer is made fully aware of the price he is paying and understandingly accepts the higher price for the privilege of present enjoyment of the goods.

The judgment of the court is affirmed in all respects, save that it fails to take into account the single payment made by the Matthews in the amount of $61.04 which should be credited against the amount awarded defendant.

Case remanded for amendment of judgment in conformance with the foregoing. Costs to appellee.

HOLBROOK and McGREGOR, JJ., concurred.