*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 06a0397p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

In re: ERNEST R. BERGMAN; SHIRLEY E. BERGMAN,
                                                        *Debtors.*

No. 05-4312

BRUCE COMLY FRENCH, Trustee for the Debtor
Estate of Ernest Bergman and Shirley E. Bergman,

                                        *Plaintiff-Appellant,*

        *v.*

STEVE FREY; ANTHEM BLUE CROSS AND BLUE
SHIELD; GERMAN MUTUAL INSURANCE COMPANY,
                                        *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio.
Nos. 05-07311; 05-07310—
James G. Carr, Chief District Judge.

Submitted: September 12, 2006

Decided and Filed: October 27, 2006

Before: MERRITT and MOORE, Circuit Judges; COLLIER, Chief District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:** Bruce Comly French, Lima, Ohio, Ryan Q. Ashworth, Ada, Ohio, for Appellant. Louis F. Solimine, THOMPSON HINE, Cincinnati, Ohio, Curtis L. Tuggle, THOMSON HINE, Cleveland, Ohio, for Appellees.

_____

[*] The Honorable Curtis Lynn Collier, Chief United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

—————————

## OPINION

—————————

MERRITT, Circuit Judge. On March 23, 2003, prior to filing bankruptcy, Ernest and Shirley Bergman were involved in an automobile accident. The Bergmans' medical insurer, Anthem Blue Cross and Blue Shield provided coverage for approximately $3,000 in medical expenses incurred by the couple arising from the accident. After the Bergmans filed a Chapter 7 bankruptcy petition, the trustee initiated a personal injury lawsuit on behalf of the debtor estate against Steve Frey, the other party to the automobile accident, seeking in excess of $100,000 in damages. The issue in the present action is whether Anthem, via a subrogation clause in the Bergmans' insurance policy, acquired a pre-petition interest in the first $3,000 the Bergmans may obtain from Frey. The District Court held that it did. The Trustee argues that Anthem did not acquire a pre-petition interest and that the insurer should properly be classified as a general unsecured creditor. For the reasons explained below, the decision of the District Court is affirmed.

The Bergmans' insurance policy includes a subrogation clause, which provides:

> We [Anthem] have the right to recover payments we make on your behalf from any party responsible for compensating you for your injuries. The following apply: We have first priority for the full amount of benefits we have paid from any recovery regardless of whether you are fully compensated, and regardless of whether the payments you receive make you whole for your losses and injuries.

After the bankruptcy commenced, the Trustee filed a personal injury suit on behalf of the debtor estate against Frey, seeking more than $100,000 in damages. The Trustee also initiated an adversary complaint against Anthem, asking the bankruptcy court to declare the Bergmans' insurer a general unsecured creditor. The Bankruptcy Court consolidated both actions into a single proceeding and the District Court withdrew the case from the Bankruptcy when Frey demanded a jury trial. In the District Court, the Trustee moved for a judgment on the pleadings and Anthem cross-moved for summary judgment. The District Court granted Anthem's motion, holding that under Ohio law the insurer had a pre-petition property interest in any recovery that the Bergmans may receive arising out their accident with Frey.

We review the District Court's grant of summary judgment de novo. The issue presented is whether an insurer's contractual subrogation rights create a property right in the insurer, so that this contractual right is not properly included in the bankruptcy estate. The Bankruptcy Code defines the property of a debtor's estate as "all legal or equitable interests of the debtor in property at the outset of the case." 11 U.S.C. § 541(a)(1). Unless a federal interest is at issue, property rights are defined by state law. *Butner v. United States*, 440 U.S. 48, 55 (1979). Here, the court must look to state law to determine whether, at the outset of the Bergmans' bankruptcy case, the debtors possessed a legal or equitable interest in any potential recovery from Steve Frey.

The Ohio Supreme Court confronted this issue outside of the bankruptcy context in a dispute between a medical insurer and its insured in *Blue Cross and Blue Shield v. Hrenko*, 647 N.E.2d 1358 (1995). In *Hrenko*, the insurer paid for medical expenses incurred by its insured as a result of an automobile accident. The other party to the accident was not insured, so Hrenko pursued a claim under the uninsured motorist provision in his automotive insurance policy. The medical insurance company sued, arguing that the policy's subrogation clause entitled it to reimbursement for the

money it had expended on behalf of its insured.[1]  The Supreme Court agreed, rejecting Hrenko's arguments that his medical insurer's subrogation rights existed exclusively against the tortfeasor or tortfeasor's insurer and that the insurer's subrogation rights were contrary to public policy.  *Id.* at 1360.  The Court held that the plain meaning of the contract language allowed the insurer to recover directly from compensation the insured received from any third party.  *Id.* at 1359.

The subrogation rights conferred by contract are not affected by the Bankruptcy Code or the bankruptcy proceedings of the insured.  In *Perlman v. Reliance Insurance Co.*, 371 U.S. 132 (1962), an insurance company provided surety bonds for a construction company that undertook a government project.  *Id.* at 133.  The bonds were to be used to compensate laborers and material suppliers at the project's conclusion if the company failed to meet its obligations.  *Id.*  As the project progressed, the government also retained a portion of the payments due to the construction company under the contract.  *Id* at 134.  Before the project was completed, the construction company terminated the contract and filed bankruptcy, leaving a second company to finish the work.  *Id.*  At the project's conclusion, the insurance company fulfilled its obligations by paying the full value of the surety bonds to creditors of the first construction company.  *Id.*  At this point the government turned over the money it had withheld under the contract to the Trustee for the bankrupt construction firm.  *Id.*

The insurance company intervened in the bankruptcy claiming that the money belonged to it and not the bankruptcy estate under the subrogation clause in the surety bonds.  *Id.* at 136.  The Supreme Court enforced the subrogation clause, holding that "Property interests in a fund not owned by a bankrupt at the time of adjudication, whether complete or partial, legal or equitable, mortgages, liens, or simple priority of rights, are of course not part of the bankrupt's property and do not vest in the trustee."  *Id.* at 135-36.  Since the insurance company had a contractual right to subrogation before its insured filed bankruptcy, the Trustee could not properly acquire it for the benefit of the general creditors.

A more recent case, adjudicated under the Bankruptcy Code and Ohio law, reached the same result. *In re DuBose*, 174 B.R. 260 (Bankr. N.D. Ohio 1994).  In *Dubose*, the husband debtor was involved in an automobile accident prior to the couple's bankruptcy filing.  Like Anthem in the present case, Mr. Dubose's medical insurer covered medical expenses he incurred as a result of the accident.  While their bankruptcy was pending, the debtors received a personal injury settlement from the other party to the accident and reimbursed their medical insurer pursuant to the subrogation clause in their policy.  When the Trustee learned of the payment to the medical insurer, he moved to set aside the post-petition transfer for the benefit of the couple's unsecured creditors.

The Bankruptcy Court denied the Trustee's motion, finding that the monies owed to the insurance company under a subrogation clause were never part of the bankruptcy estate.  The court reasoned that the subrogation clause rendered the payment to the medical insurer compensation for a "separate and independent cause of action between [the debtors' insurer] and the tortfeasor."  *Id.* at 262.  The court bluntly observed that "the Debtors did not have an interest in the transaction" between the tortfeasor and their insurer.  *Id.*

Under Ohio law, Anthem acquired a pre-petition property right in any future recovery by the Bergmans arising from the March 2003 accident as soon as it expended money for their medical care.  *Hrenko* makes clear that the property rights of an insurer are governed by the policy language.  The subrogation clause in the Bergman's policy stated, "We [Anthem] have the right to recover

---

[1]The subrogation clause in Hrenko's policy stated, "To the extent we provide or pay for Covered Services, we assume your legal rights to any recovery of expenses incurred.  To the extent we provide or pay benefits for Covered Services, you must repay us amounts recovered by suit, settlement or otherwise from any third party or his insurer."  647 N.E.2d at 1359.

payments we make on your behalf from any party responsible for compensating you for your injuries." This language is the functional equivalent of the clause the Ohio Supreme Court found to create an enforceable property right in the Hrenko's medical insurer. Since the property right immediately vested in Anthem, it was not included in the Bergmans' bankruptcy estate under § 541 of the Bankruptcy Code.

This result comports with the Supreme Court's reasoning and result in *Perlman* where the language of the surety bond vested a property right in the bond's issuer outside of bankruptcy that put the money facially owed to the debtor beyond the reach of the Trustee. *DuBose* likewise supports the finding that the insurer owns an interest in the money recovered by the insured up to the amount of the insurer's expenses. Since this interest accrues to the insurer alone, it can never become part of the bankruptcy estate.

The Trustee argues that the policy language gives Anthem a right of reimbursement but not subrogation. This interpretation is not compatible with the plain meaning of the clause. The statement that Anthem "may recover payments," clearly indicates that it has the contractual right to seek payments directly. There is nothing in the clause that suggests that Anthem must wait until the Bergmans are compensated in order to enforce its rights under the policy. The Trustee is correct that the presence of a reimbursement clause, instead of the subrogation language, may alter this analysis. Such a reading of this clause, however, is not plausible.

For the foregoing reasons, we affirm the judgment of the district court.